**WOTOLA ROYALTY CORPORATION et al.
v. BETHLEHEM SUPPLY CO. et al.**

No. 5291.

Court of Civil Appeals of Texas. Amarillo.

April 28, 1941.

Rehearing Denied June 9, 1941.

John Davenport, of Wichita Falls, for appellants.

Riley Strickland, of Amarillo, and L. M. Fischer, of Corpus Christi, for appellees.

FOLLEY, Justice.

On January 7, 1935, the appellants, Wotola Royalty Corporation and six others, who were the owners of the mineral estate of the E½ of the W½ of the NE¼ of Section 45 in Block 24, H. & G. N. Ry. Co. Survey in Wheeler County, Texas, entered into a written lease or drilling contract with James G. Cloud whereby the leasehold estate with certain reservations was leased to Cloud for the purpose of mining and operating for oil and gas. The contract was forthwith duly filed for record and recorded in the deed records of Wheeler County, Texas. The contract provided that the lessors were to receive $20,000 from the lessee out of one-fourth of seven-eighths of the oil and gas produced from the land. The lessee further agreed to deliver to the credit of lessors free of cost the equal of one-eighth of all oil produced and saved from the premises and one-eighth of the net proceeds derived from the sale of gas at the mouth of the well. The lessee agreed to begin the drilling of a well for oil and gas within thirty days from the date of the agreement and to prosecute the same with due diligence to the producing oil horizon in such district, which was stipulated to be approximately 2,400 feet. The les-

see further agreed that within thirty days after the completion of the first well he would begin drilling a second well on the premises, which operation was also to be prosecuted with due diligence. The lease contract also contained the following provision material to this controversy: "It is agreed that this lease shall remain in force as long as oil and gas, or either of them, is produced from said land by the lessee, except that in the event of failure to fully comply with the drilling obligation of lessee, said lease is to revert in its entirety to lessors, including any and all completed or semi-completed well or wells and materials, including casing, tubing, pumping equipment, tanks, pipe lines, derricks and any other materials located on the said premises."

It appears that soon after the execution of the contract James G. Cloud organized a corporation known as the Triplex Oil Company, of which he was president, and the leasehold estate acquired by Cloud was duly transferred to such company. The Triplex Oil Company drilled one well upon the premises, which was a producer of both oil and gas in paying quantities, but failed to commence or drill the second well as agreed, nor has such second well ever been drilled by anyone.

During the drilling operations of the first well the Triplex Oil Company became indebted for more than $10,000 to various persons and concerns, who are the appellees herein, for labor, materials and supplies furnished such company in the course of the work. It is this indebtedness and the liens incident thereto, asserted under article 5473, R.C.S. of 1925, Vernon's Ann. Civ.St. art. 5473, which form the basis for the present controversy.

In July, 1935, after the contract had been breached, the Wotola Royalty Corporation and the other lessors filed suit to cancel the lease contract and sought the appointment of a receiver to operate the producing well on the premises. Such receiver was appointed and took charge of the leasehold estate which he held until discharged by the judgment from which this appeal is prosecuted.

The appellees intervened in the suit by divers pleas of intervention asserting their claims and liens.

The Bethlehem Supply Corporation sought judgment for the balance alleged due it in the sum of $3,249.65 for 2,001 feet of 8½-inch casing and joints therefor and for foreclosure of a materialman's lien upon the casing so furnished, the oil well, the leasehold estate and all personal property and improvements located thereon and used in connection with the oil well.

The Bethlehem-International Supply Company sought judgment against Cloud and the Triplex Oil Company for $2,205.05 alleged to have been due it for certain oil well material, equipment, tools and supplies furnished Cloud and the Triplex Oil Company, as described in its petition, and also sought foreclosure as against all parties of a materialman's lien upon the leasehold estate, the oil well, the materials and supplies furnished by it and all improvements and personal property used in connection with the oil well.

The Bovaird Supply Company asked for judgment against Cloud and the Triplex Oil Company for $731.03 alleged to have been due it for one 4,000 foot ⅞-inch hemp center hazard drilling cable, reel No..3054, furnished to Cloud and the Triplex Oil Company, and for foreclosure of its materialman's lien against all parties upon the leasehold estate and all improvements thereon, including all personal property and the drilling cable so furnished.

A. R. Evans sought judgment against the Triplex Oil Company for $144.45 alleged to be due him for certain lumber, material and supplies furnished the Triplex Oil Company as set out in his petition, and for foreclosure against all the parties of a materialman's lien upon the leasehold estate, the oil well, and all buildings, improvements and appurtenances and all personal property used in connection therewith, including the lumber, material and supplies so furnished by him.

Webb Wiseman, temporary administrator of the estate of A. J. Wiseman, deceased, asked for a judgment against the Triplex Oil Company for $1,350 alleged to have been the balance due for labor and material in the erection by the deceased of an 84-foot turnbuckle rig on the lease, together with sills and rig irons, and for a foreclosure against all parties of a laborer's, materialman's and contractor's lien upon the leasehold estate, the oil and gas well, and all buildings, improvements and appurtenances and personal property thereon located and used in connection therewith, including the rig, rig irons, sills and all materials furnished by the deceased.

Black, Sivalls & Bryson, Inc., sought judgment against the Triplex Oil Company for $660.04 alleged to be due it upon the sale to the Triplex Oil Company of one 250-barrel bolted steel tank and one old style 4'x12' American oil and gas separator No. 100, and for foreclosure against all the parties of a chattel mortgage upon such property, such chattel mortgage alleged to have been executed and filed for record prior to the delivery of such mortgaged property upon the leasehold premises.

Joel A. Wolfe, executor of the estate of Frank Wolfe, deceased, sought judgment against the receiver for the possession of certain drilling tools, or in lieu thereof to compel the receiver to pay him the value of the same, said drilling tools alleged to have been of the value of $400 and to have been furnished to the Triplex Oil Company by Frank Wolfe for which the Triplex Oil Company agreed to pay him the sum of $400 and executed a chattel mortgage therefor upon such drilling tools, but which amount had never been paid, such mortgage alleged to have been given before such tools were placed upon the lease. In the alternative such intervener sought judgment against the Triplex Oil Company for his debt of $400 with interest and for foreclosure of the chattel mortgage lien upon the drilling tools. The drilling tools were itemized and described both in the pleadings of Wolfe and in the judgment of the trial court.

W. B. Pettit, G. Edwards, J. E. Brooks and W. M. Wilder each sought judgment against the Triplex Oil Company for $602, $699, $569 and $699, respectively, for labor performed in connection with the drilling of the well on the lease and each also sought foreclosure as against all other parties of his laborer's lien against the leasehold estate, the oil well and all buildings, improvements and appurtenances and personal property and equipment located on such lease and used in connection therewith.

The cause was tried before the court without a jury. The judgment of the court contains numerous findings of fact which precede the decree disposing of the claims of the various parties. One of these findings about which no complaint is made was to the effect that each of the appellees had perfected his respective statutory laborer's and materialman's lien in the manner and within the time required by law. Without burdening this opinion with a recitation of the other findings of the court suffice it to say that the court made findings of fact in keeping with and in support of his judgment.

The judgment rendered was as follows: that the Wotola Royalty Company and the other appellants recover judgment against James G. Cloud and his wife, Ethel Cloud, who was made a party to the suit, and the Triplex Oil Company, for the right, title and estate which said parties may have, own or claim in and to the leasehold estate, the oil and gas well and all personal property, buildings, improvements and appurtenances thereon situated and used in connection with such leasehold estate, save and except the drilling tools sold by Frank Wolfe, and save and except that such property so recovered by the appellants would be burdened with the mechanic's and materialman's liens and laborer's liens and chattel mortgage liens fixed and established in favor of the interveners; that the Bethlehem Supply Corporation recover against the Triplex Oil Company $2,001.18; that the Bethlehem-International Supply Company recover against the same company $2,205.05; the Bovaird Supply Company $731.03; A. R. Evans $144.45; Webb Wiseman, as temporary administrator, $1,350; Black, Sivalls & Bryson, Inc., $660.04; Joel A. Wolfe, as executor, $567.50; W. B. Pettit $602.00; G. Edwards $699; J. E. Brooks $569; W. M. Wilder $699; that the Bethlehem Supply Corporation, Bethlehem-International Supply Company, Bovaird Supply Company, A. R. Evans, Webb Wiseman, W. B. Pettit, G. Edwards, J. E. Brooks and W. M. Wilder each respectively possessed valid and subsisting liens upon the oil and gas leasehold estate, the oil and gas well thereon, all buildings, improvements, appurtenances and personal property and equipment located thereon and used in connection therewith, except the tank and separator furnished by Black, Sivalls & Bryson, Inc., and the drilling tools furnished by Frank Wolfe; that such liens were fixed upon such property at the date of the furnishing of the respective materials, and the performance of labor by the respective laborers; that the same were declared to be of equal dignity, parity and upon equal footing, and the same were ordered foreclosed; that the chattel mortgage lien of Black, Sivalls & Bryson,

484

Inc., on the oil and gas separator and upon the bolted steel tank were valid and subsisting liens thereon and prior to all other liens of all other parties to the suit; that such liens were ordered foreclosed; that the chattel mortgage lien of Joel A. Wolfe, as executor, upon the drilling tools described in his petition was a valid and subsisting lien thereon and prior to all other liens of all other parties to this suit; that such lien was ordered foreclosed; and the court further decreed that the receiver be discharged. It is from this judgment the appeal is prosecuted by the appellant lessors. There is no appeal or cross-assignments of error by any other parties to this suit. Therefore, the only controversy before us is as to the relative rights of the lessors and the appellee lienholders in and to the property herein involved.

It is the contention of the appellants that by reason of the breach of the drilling obligations of the lessee and his assignee the title to all the property involved in this suit, both real and personal, reverted to them under the forfeiture provision of the lease free and clear of the claims and liens of the appellees. In such contention we think the appellants are partially correct. In so far as the real property is concerned, that is the leasehold estate, the oil and gas well, and all buildings, improvements and appurtenances, under the provisions of the lease we think there can be no doubt that the asserted liens of the appellees are subservient and inferior to the reversionary interest of the appellants. This reversionary interest was a matter of record in the deed records of Wheeler County at the time the purported liens were fixed and the appellees were thus charged with knowledge of such conditional estate. The interest held by the lessee and the assignee was subject to the performance of the drilling obligation, and of this fact the appellees had constructive knowledge at the time their purported liens were created. Under such conditions the lessee and the assignee could encumber the real property only to the extent of the interest held in it by each respectively which interest expired by the non-performance of the contract; and with it we think also expired the liens of the appellees in so far as the real property is concerned. This limitation upon the authority of a lessee of real property to encumber the property

of the owner with mechanic and materialman's liens under the provisions of article 5452, R.C.S. of 1925, has been well settled by the authorities of this State. In this connection, however, we are not unmindful of the fact that article 5452 provides for a lien only upon contracts with the owner of real property, his agent, trustee, receiver or contractor, and therefore excludes the authority of a lessee. We are also not unmindful of the fact that article 5473, under which the appellees assert their liens, provides for a lien for laborers and materialmen under contract both with the owner of the land and the owner of the leasehold interest in the land, and thus includes the lessee as well as the owner of the mineral estate. However, we do not think the latter statute by its terms or by implication would authorize the owner or the lessee of the mineral estate to encumber more than his individual interest therein.

In a similar situation with reference to a materialman's lien under article 5452, et seq., of Chapter 2, Title 90, R.C.S. of 1925, in Campbell v. Teeple et al., Tex. Civ.App., 273 S.W. 304, 306, it is said: "No lien can attach to the estate or reversion of the landlord, and, where goods have been put into, or fixtures are wrought into, a building so as to become a part of the realty, the materialman's liens can only attach to such estate of the tenant as he possesses and subject to all the terms and conditions of the lease and to all the rights of the landlord or owner, so that when the lease has been terminated and forfeited, the tenant has no estate left to which such a lien may attach. There is nothing upon which a materialman can foreclose."

In Hammond et al. v. Martin, 15 Tex. Civ.App. 570, 40 S.W. 347, 348, writ refused, where a claimant sought to charge the reversionary interest of the owner of land for improvements made for the lessee, we find this language: "The appellee was not a party to the judgments of appellants foreclosing their mechanics' liens upon the improvements, nor was he aware that they were being erected with the expectation that they might be removed, or his rights in any manner affected by any pretended claim or lien asserted by the contractors and material men who were erecting them. He did not know that they were not paid for. The appellants could not enforce a lien upon the appellee's

property without his knowledge or consent, and they must, in law, be charged with knowledge of the extent of the right of the fair association in the property in question; and there is no force in the contention that the constitution and laws give to the mechanics and material men a lien upon property under a contract made with one who has no authority to create such a lien as against the real owner."

In Volume 2 of Summers Oil and Gas, Permanent Edition, page 472, § 443, the author states: "It is a settled principle of law that a condition expressly reserved in a lease binds all persons claiming an interest therein under the lessee, and their interests are liable to be defeated by breach of the condition."

Again, in Tiffany Real Property, Third Edition, Volume 1, page 365, para. 214, with reference to the effect of a forfeiture, it is said: "The enforcement of a forfeiture for the breach of an express condition subsequent avoids the estate ab initio for most purposes, the grantor being in as of his original estate as if he had never parted with it. As a result of this rule, any estates or incumbrances created by the grantee or lessee on condition are rendered nugatory by such enforcement of forfeiture, or in other words, all persons claiming under him are bound by the condition. The rule applies as against an assignee of an estate for years as of other estates, and he takes it subject to any conditions imposed in its creation, and is liable to be divested on the breach of any one of them; and it is immaterial, in this respect, whether the condition is for the performance of some covenant which touches the land and runs with it, or one which is wholly collateral. And so a subtenant is bound by a condition of the original lease. And a mortgage, or other lien, subsequently created, is absolutely divested upon the enforcement of the condition."

Also, in Jones on Liens, Volume II, page 260, para. 1273, on the effect of the forfeiture of a lease, the text writer says: "A mechanic's lien attaches to a lessee's leasehold estate subject to all the conditions of the lease. Though the lessee has made valuable improvements, which are to become the property of the lessor at the end of the term, or which are to revert to him upon his failure to perform the covenants of the lease, upon the lessee's default the property reverts to the lessor free from the lien of mechanics, unless these are in some way protected by statute."

In further support of this proposition are the following authorities: Galveston Exhibition Ass'n et al. v. Perkins et al., 80 Tex. 62, 15 S.W. 633; Eardley Bros. v. Burt et al., Tex.Civ.App., 182 S.W. 721; Williams v. Vanderbilt, 145 Ill. 238, 34 N.E. 476, 21 L.R.A. 489, 36 Am.St. Rep. 486; Minneapolis Threshing Mach. Co. v. Hanson et al., 101 Minn. 260, 112 N.W. 217, 118 Am.St.Rep. 623; Francis Bros. v. Schallberger, 137 Or. 529, 3 P. 2d 530, 83 A.L.R. 108; Guerra et al. v. Chancellor et al., Tex.Civ.App., 103 S.W. 2d 775, writ refused; 31 Tex.Jur. para. 365; 29 Tex.Jur. para. 43.

We are not impressed with appellees' contention in this connection to the effect that the Triplex Oil Company was acting as the agent of the lessors and as such bound the appellants for the claims and liens of the appellees. Such contention has been foreclosed against the appellees by many authorities. Burk Burnett-Mann Oil Co. v. Robertson, Tex.Civ. App., 240 S.W. 1046; Sumrall v. Russell, Tex.Civ.App., 255 S.W. 239; Penfield et al. v. Harris et al., 7 Tex.Civ.App. 659, 27 S.W. 762, writ denied; Texas Unity Oil Co. et al. v. Dolman, Tex.Civ.App., 8 S.W.2d 815; Faber v. Muir et al., 27 Tex.Civ.App. 27, 64 S.W. 938, writ refused; Prairie Lea Production Co. v. Lincoln Tank Co. et al., Tex.Civ.App., 294 S.W. 270; Cleburne St. Ry. Co. v. Barber, Tex.Civ.App., 180 S.W. 1176, writ refused; Shell Petroleum Corporation v. Caudle et al., 5 Cir., 63 F.2d 296; Root et al. v. Tomberlin et al., Tex.Civ.App., 36 S.W.2d 596.

In so far as the personal property on the lease is concerned we think under the most liberal construction of the forfeiture provisions of the contract the parties thereto intended at most that the reversionary clause should apply only to such personal property, if any, as passed to the lessee under the lease and to such personal property on the lease thereafter acquired by the lessee or his successor in interest which might be free from the claims or liens of third parties. At any rate, if the parties had intended that all personal property on the lease should revert to the lessors regardless of the rights and claims of third parties, we think under the circumstances of this case only the interest of the lessee or assignee in

such personal property should revert to the lessors, which would not include the interests of the appellees therein. Denny et al. v. White House Lumber Co. et al., Tex.Com.App., 54 S.W.2d 86. Therefore, we are of the opinion that each of the appellees who furnished materials and supplies to the Triplex Oil Company should have a preference lien respectively upon such materials and supplies so furnished provided such personalty has not become fixed as a part of the realty and thereby reverted to the lessors under the reversionary clause of the contract. It is further our opinion that the chattel mortgages of Black, Sivalls & Bryson, Inc., and of Wolfe, were in no manner affected by the reversionary clause of the lease contract. Wagner Supply Co. v. Bateman, 118 Tex. 498, 18 S.W.2d 1052.

Under such theory relative to the personal property we think there was no error in the judgment in favor of Black, Sivalls & Bryson, Inc., for foreclosure upon the separator and steel tank nor in the judgment of foreclosure in favor of Joel A. Wolfe upon the drilling tools furnished by Frank Wolfe. We are also of the opinion there was no error in the foreclosure judgments in favor of the Bethlehem Supply Corporation, the Bethlehem-International Supply Company, the Bovaird Supply Company, A. R. Evans and Webb Wiseman in so far as such foreclosure attaches to personal property furnished respectively by such parties, but we think the court erred in foreclosing such liens in favor of such parties in so far as the foreclosure applies to or affects the realty of the leasehold estate; in other words, these parties should have no lien on the realty or upon any materials and supplies which have lost their identity as personal property and become attached to the soil. Moreover, since article 5473 does not invest laborers with any lien upon personal property not furnished by them but confines their liens strictly to real property, and since all of the real property herein has reverted to the lessors, we are further of the opinion the court erred in decreeing any foreclosure in favor of W. B. Pettit, G. Edwards, J. E. Brooks and W. M. Wilder for labor performed by them.

The judgment of the trial court in favor of the appellants cancelling the lease not having been appealed from the same is not disturbed; the money judgments in favor of the appellees against the Triplex Oil Company are respectively affirmed; the foreclosure judgments in favor of Black, Sivalls & Bryson, Inc., and Joel A. Wolfe are respectively affirmed; the foreclosure judgments in favor of W. B. Pettit, G. Edwards, J. E. Brooks and W. M. Wilder, respectively, in so far as appellants are concerned are reversed and rendered in favor of the appellants; the foreclosure judgments in favor of the Bethlehem Supply Corporation, the Bethlehem-International Supply Company, Bovaird Supply Company, A. R. Evans and Webb Wiseman are reformed so as to allow a foreclosure recovery in favor of each respectively upon the personal property furnished by each which still retains its identity as personal property, but foreclosure is denied such parties upon any real property on the premises, and as so reformed the judgment as to these parties is affirmed.

The judgment is affirmed in part, reversed and rendered in part, and reformed and affirmed in part.